UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80494-RS

THOMAS BURGESS,

        Plaintiff,

vs.

DEPUTY WILLIAM ROTHMAN,

        Defendant.
_____/

# REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF No. 47]

Defendant, Palm Beach Sheriff's Office ("PBSO") Deputy William Rothman, moves to dismiss the Second Amended Complaint ("SAC") of pro se Plaintiff, Thomas Burgess, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 47. Judge Smith referred the Motion to Dismiss to me for a Report and Recommendation. ECF No. 38. I have reviewed the SAC, ECF No. 46; the Motion to Dismiss, ECF No. 47; Plaintiff's Response, ECF No. 48; Defendant's Reply, ECF No. 49; and pertinent parts of the record. For the reasons discussed below, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** and that the SAC be **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Mr. Burgess brings this action under 42 U.S.C. § 1983, asserting that Deputy Rothman violated his constitutional rights under the Fourteenth Amendment's Equal

Protection Clause and under the Fourth Amendment's Search and Seizure provision. ECF No. 46. The allegations below are taken from the SAC and accepted as true for purposes of the Motion to Dismiss.

Mr. Burgess alleges that in May 2021, he had been staying at the Capri Apartments, a motel in Lake Worth Beach managed by Lester Schwalm. *Id.* ¶¶11–12.[1] One morning, Mr. Burgess went to the motel offices to locate Mr. Schwalm and arrange to continue his stay; however, he could not find him, so he called and left a voice mail to inform Mr. Schwalm that he would pay for another night. ¶¶15–20. He then left for a doctor's appointment but also called Mr. Schwalm again and sent a text message. ¶21. Mr. Burgess returned to the motel ten minutes after the checkout time to find Mr. Schwalm had taken his belongings "out of the room" where he had been staying. ¶23. Mr. Burgess explained to the manager that he had tried to reach him, and that the manager "was wrong for the way he treated the plaintiff." ¶24. Mr. Burgess placed his property in his car and drove to a different motel. ¶25. At the new motel, he noticed some of his items were missing, so he returned to the Capri Apartments on May 25, 2025, to inquire about those items. ¶28. When he arrived, the manager began yelling at him and walking toward him, which scared Mr. Burgess and caused him to dial 911. ¶¶28–29. He explained to the 911 operator that he feared Mr. Schwalm was "going for a gun and told the 911 operator to hurry up and get to

---

[1] Unless otherwise noted, all paragraph citations reference the SAC, ECF No. 46.

the Capri Apartments." ¶30. Mr. Burgess waited on the sidewalk for a police officer to arrive. ¶33.

Deputy Rothman responded to Mr. Burgess' 911 call. ¶36. Deputy Rothman was looking for Mr. Burgess, as he had called 911 and informed the operator where he would wait. ¶37. Once Deputy Rothman made contact with Mr. Burgess, he "began to Racially Profile the plaintiff and he was talking to the plaintiff as if the plaintiff did something wrong," and told Mr. Burgess "that he could take the plaintiff to jail if he chose to, and he also ran the plaintiff's name for warrants, which made the plaintiff in fear of his life and liberty." ¶38. Deputy Rothman did not run Mr. Schwalm's name for warrants. ¶62. Mr. Burgess explained to Deputy Rothman why he had called 911, but Deputy Rothman disregarded the explanation. ¶39. Mr. Burgess then asked Deputy Rothman to allow him to leave, but Deputy Rothman "told the plaintiff that he could not leave." ¶40. Deputy Rothman then spoke with Mr. Schwalm approximately 50 feet from where Mr. Burgess stood. ¶41. After speaking with Mr. Schwalm, Deputy Rothman returned to Mr. Burgess and informed him he could not leave until Deputy Rothman "created a case number for no trespassing." ¶42. Deputy Rothman then issued Mr. Burgess a trespass warning. ¶43.

In 2024, Mr. Burgess accessed Deputy Rothman's police report from the incident and believed it contained false statements, including that Mr. Burgess refused to leave the Capri Apartments property, that he had left his property for five days without paying, and that Mr. Schwalm was the 911 caller. ¶¶44–50, 56. Mr. Burgess alleges he can show Deputy Rothman is lying through recordings and

testimony from Mr. Burgess' probation officer. *Id*. Mr. Burgess is an African-American male, and the motel manager is a white male. ¶¶59–60.

Count I asserts that Deputy Rothman violated Mr. Burgess' rights under the Fourteenth Amendment's Equal Protection Clause by crediting the manager's version of events, lying on the police report, and issuing Mr. Burgess a trespass warning based on racial profiling. ¶¶74-79, 84, 88–89. Mr. Burgess claims that Deputy Rothman's actions constituted racial profiling because he believed the manager, a white male, rather than Mr. Burgess, an African-American male. *Id*. In addition, Mr. Burgess claims Deputy Rothman was trying "to put a target on the plaintiff's back so that other law enforcement officers and/or himself could make unlawful *Terry* stops on the plaintiff." ¶96.

Count II asserts that Deputy Rothman violated Mr. Burgess' rights under the Fourth Amendment by forcing Mr. Burgess to wait on the sidewalk while he spoke with Mr. Schwalm and while he created a trespass case against Mr. Burgess, refusing to allow him to leave. ¶¶104–14.

## STANDARD ON MOTION TO DISMISS

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic

4

recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pleaded factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570.

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols.,*

5

*Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

## DISCUSSION

Section 1983 creates a private right of action against persons who, under color of law, subject a plaintiff to a deprivation of federally protected rights. 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege that the defendant acted under color of state law and that the defendant's actions deprived the plaintiff of a federal right. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). "Section 1983 is no source of substantive federal rights. Instead, to state a Section 1983 claim, a plaintiff must point to a violation of a specific federal right." *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

### A. Count I: Equal Protection Claim Against Deputy Rothman

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006). "A successful equal protection claim under the Fourteenth Amendment requires proof of *both* an intent to discriminate and actual discriminatory effect." *Greater Birmingham*

6

*Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021) (emphasis in original).

To make a claim of discriminatory motive plausible on its face, it must be accompanied by factual allegations that can show the alleged improper actions were motivated by race. *See Smith v. Reg'l Dir. of Fla. Dep't of Corrections*, 368 F. App'x 9, 12–13 (11th Cir. 2010) (equal protection claim failed where defendants allegedly falsified documents, segregated a prisoner-plaintiff, and denied him privileges, but there was no indication the acts were driven by race); *Smith v. Lopez*, No. 24-CV-25133, 2025 WL 471203, at *3-4 (S.D. Fla. Feb. 4, 2025) (conclusory allegations that the defendant threatened to have the plaintiff arrested for trespass and wrote a false police report because of the plaintiff's race were insufficient to sustain an equal protection claim) (appeal dismissed, No. 25-10441 (11th Cir. Sept. 23, 2025)).

In this case, Mr. Burgess contends Deputy Rothman discriminated against him by crediting the motel manager's account of events, making false statements on the police report, and issuing him a trespass warning because of race, but he provides no facts to support this contention. He speculates that because he is African-American and the manager is white, Deputy Rothman's actions must have been motivated by race. Even when viewed in the light most favorable to Mr. Burgess, the SAC is devoid of facts that could plausibly allege that Deputy Rothman harbored discriminatory intent or that his actions had a discriminatory effect. In addition, "the filing of a false police report is not itself a constitutional violation." *Rivera v. Marin R*, No. 23-CV-62034, 2024 WL 3298989, at *5 (S.D. Fla. May 16, 2024) (quoting *Jones v. Gordon*,

7

No. 21-CV-1251, 2021 WL 4465194, at *2 (M.D. Fla. Aug. 16, 2021)). In *Rivera*, the court noted that the police report did not lead to the plaintiff's arrest or prosecution, had not been used against him in court, and did not lead to deprivation of a liberty interest or other right. *Id.* at *6. The court then dismissed the claim that was based on the false police report.

Similarly, in this case, assuming Deputy Rothman included false statements in his police report, there are no allegations that the report led to Mr. Burgess' arrest or prosecution or deprived him of any federal right. *See Lee v. City of Phila.*, 627 F. App'x 175 (3d Cir. 2015) (allegations that police officer improperly sided with a party in a domestic violence dispute and filed a false police report did not support a § 1983 claim when the report was not used against him in court proceedings). Here, the SAC contains no allegations that the police report was ever used against Mr. Burgess in any way or that Mr. Burgess was arrested or prosecuted. In fact, Mr. Burgess was unaware of the report's contents until he "decided to pull the police report" in 2024, approximately three years after the incident. ¶37. Accordingly, the SAC fails to state a claim under the Fourteenth Amendment's Equal Protection Clause.

### B. Count II: Fourth Amendment Claim Against Deputy Rothman

The Fourth Amendment provides, in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment "broadly declares a right of the people to be free from certain types of intrusion, which right courts construe as a limit on government action." *Reyes v. Maschmeier*, 446 F.3d

8

1199, 1203 (11th Cir. 2006). For liability to attach, "there must be a government seizure and that seizure must be unreasonable." *Id.* (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). The Eleventh Circuit has "categorized encounters between police and citizens into three types, with varying levels of Fourth Amendment scrutiny: '(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.'" *Id.* (quoting *United States v. Perez,* 443 F.3d 772, 777 (11th Cir. 2006)). The *Jordan* court explained:

> The first type of encounter, often referred to as a consensual encounter, does not implicate the Fourth Amendment. *Id.* The government bears the burden of proving voluntary consent based on a totality of circumstances. *United States v. Beckham,* 505 F.2d 1316, 1318 (5th Cir. 1975). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." *Perez,* 443 F.3d at 777–78 (quotations and emphasis omitted). "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *United States v. Franklin,* 323 F.3d 1298, 1301 (11th Cir. 2003) (quotations omitted). If the citizen's cooperation is induced by "coercive means" or if a reasonable person would not "feel free to terminate the encounter," however, then the encounter is no longer consensual, a seizure has occurred, and the citizen's Fourth Amendment rights are implicated. *See United States v. Drayton*, 536 U.S. 194, 201 (2002).

*Jordan*, 635 F.3d at 1186. A show of authority can be a seizure if the subject yields to that authority. *California v. Hodari D.,* 499 U.S. 621, 625–26 (1991). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person" for Fourth Amendment purposes. *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014).

9

In determining whether a police-citizen encounter is consensual or whether a seizure has occurred, courts consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *Jordan*, 635 F.3d at 1186 (quoting *Perez*, 443 F.3d at 778). These factors are used as "relevant guidance" in evaluating "whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Id.* (citing *Hodari D.*, 499 U.S. at 626).

Even assuming, without deciding, that the SAC plausibly alleges that Deputy Rothman's alleged actions amount to a seizure, it was reasonable under the circumstances and, therefore, does not constitute a Fourth Amendment violation. The Fourth Amendment does not prohibit a law enforcement official from briefly detaining an individual in appropriate circumstances and in an appropriate manner. *Jordan*, 635 F.3d at 1186. Deputy Rothman arrived on the scene after a 911 call, assessed the situation, and instructed Mr. Burgess to wait while he spoke with Mr. Schwan to further investigate. Deputy Rothman then concluded that a trespass warning should be issued and told Mr. Burgess not to leave while he prepared a citation. There are insufficient facts to plausibly allege these actions were unreasonable; Mr. Burgess simply disagrees that his conduct merited a trespass warning. As a result, the SAC fails to state a claim under the Fourth Amendment.

### C. Qualified Immunity

#### 1. *Qualified Immunity Generally*

Deputy Rothman argues that he is entitled to qualified immunity, which offers "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has stressed that qualified immunity represents an immunity from suit rather than a defense to liability, and that it should therefore be addressed in the earliest possible stage of a case. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Although the defense of qualified immunity is usually raised at the summary judgment stage, it may be raised and considered on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Qualified immunity is a "muscular doctrine that impacts on the reality of the workaday world as long as judges remember that the central idea is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—before they act or do not act—if their conduct will give rise to damage liability for them." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) (citing *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). "If objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future, the official

11

deserves immunity from liability for civil damages." *Id.* (citing *Elder v. Holloway*, 510 U.S. 510, 513–15 (1994)).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted) (*quoting Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). A government official acts in his discretionary authority when he or she is "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. In addressing a motion to dismiss on qualified immunity, the Court may begin by addressing either the existence of a constitutional violation or the question of whether the right being violated has been "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Qualified immunity applies to damages claims only. *Id.* at 242–43.

A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so

egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92 (internal citations omitted).

A "clearly established right must be defined with specificity. . . ." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Supreme Court cases, Eleventh Circuit caselaw, and state Supreme Court caselaw can 'clearly establish' law in the Eleventh Circuit. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citation omitted). In addition, "persuasive decisions from other circuits can be considered in determining whether a violation was one of 'obvious clarity' for purposes of qualified immunity." *Gilmore v. Ga. Dep't of Corrections*, 144 F.4th 1246, 1263 (11th Cir. 2025).

The category of egregious conduct is "narrow" and "encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus v. Clark–Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1257 (11th Cir. 2012)). *See also Maddox*, 727 F.3d at 1121. "The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* at 1204 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

### 2. Qualified Immunity applies to Deputy Rothman.

Here, there is no dispute that Deputy Rothman was acting within his discretionary authority, as the SAC alleges that he responded to a 911 call,

13

investigated the circumstances relating to that call, and issued a trespass warning, which are legitimate job-related functions performed through means he has the power to utilize. Thus, the burden shifts to Mr. Burgess to allege sufficient facts to show that qualified immunity is not appropriate, namely that Deputy Rothman violated a clearly established federal right. *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1278 (11th Cir. 2023).

As discussed above, the SAC fails to allege facts that could plausibly support a violation of the Fourteenth Amendment or the Fourth Amendment. Mr. Burgess alleges that Deputy Rothman suspected him of wrongdoing rather than the motel manager, refused to let Mr. Burgess leave while he investigated, and issued Mr. Burgess a trespass warning when he should not have done so. The SAC further speculates, without plausible factual support, that Deputy Rothman's actions were based on racial discrimination. Thus, Mr. Burgess has not met his burden to show that qualified immunity is not appropriate. Accordingly, Deputy Rothman is entitled to qualified immunity and the SAC should be dismissed on that alternative ground. *See Valsaint v. City of Miami Beach, Fla.*, No. 21-CV-24143, 2022 WL 16635693, at *6 (S.D. Fla. Nov. 2, 2022) (officer entitled to qualified immunity when plaintiff failed to allege facts supporting racial animus or discriminatory conduct).

### D. Dismissal with prejudice is appropriate.

A district court need not allow an amendment to a complaint where the amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). In addition, a court may dismiss a case with prejudice if the plaintiff has already been

14

afforded an opportunity to amend. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016). Here, Mr. Burgess has had three opportunities to advance a complaint that states a plausible claim for relief, and he has failed to do so. Further, any amendment would be futile, as the facts Mr. Burgess alleges cannot support a claim for any kind of constitutional violation. *See Moss v. Browne*, No. 18-CV-22520, 2018 WL 8806921, at *3 (S.D. Fla. July 13, 2018).

## RECOMMENDATION

For these reasons, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** and the SAC be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodney Smith, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 13th day of January 2026.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE